UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
EASTMAN KODAK COMPANY and
MARTIN M. COYNE,

            Plaintiffs,               04 Civ. 5132 (MGC)

     - against -                <u>OPINION</u>

BAYER CORP., formerly MILES INC;
THE STERLING DRUG INC.
SUPPLEMENTAL BENEFIT PLAN;
and THE SUPPLEMENTAL BENEFIT
PLAN COMMITTEE OF STERLING
DRUG INC.,

            Defendants.
----------------------------------X

APPEARANCES:

       SULLIVAN & CROMWELL LLP
       Attorneys for Eastman Kodak Company
       and Martin M. Coyne
       125 Broad Street
       New York, NY 10004

       By:  Richard H. Klapper, Esq.
           Richard J.L. Lomuscio, Esq.

       HEIDELL, PITTONI, MURPHY & BACH, LLP
       Attorneys for Bayer Corp., The Sterling
       Drug Inc. Supplemental Benefit Plan, and
       The Supplemental Benefit Plan Committee
       of Sterling Drug Inc.

       By:  Charles L. Bach, Jr., Esq.
           Scott M. Zimmerman, Esq.

       ECKERT SEAMANS CHERIN & MELLOTT, LLC
       Attorneys for Bayer Corp., The Sterling
       Drug Inc. Supplemental Benefit Plan, and
       The Supplemental Benefit Plan Committee
       of Sterling Drug Inc.

       By:  Patrick F. Kilker, Esq.

**CEDARBAUM, J.**

Plaintiffs Eastman Kodak Company ("Eastman Kodak") and Martin M. Coyne move for summary judgment on the issue of whether Coyne has failed to exhaust his administrative remedies prior to commencing this action for supplemental pension benefits. For the reasons that follow, plaintiffs' motion is denied.

BACKGROUND

The following facts are not contested for the purposes of the present motion. Martin Coyne began working for Sterling Drug Inc. ("Sterling") in 1981. Shortly thereafter, Coyne subscribed to a Supplemental Benefit Plan (the "Plan") -- a so-called "top-hat" plan designed to provide certain executives of Sterling who participated in Sterling's standard retirement plan with supplemental payments in excess of limitations imposed by Sections 401(a)(17) and 415 of the Internal Revenue Code.[1] In 1989, Eastman Kodak acquired Sterling. The standard Sterling retirement plan became a part of Eastman Kodak's retirement plan, and subscribers to the Plan became entitled to payments in excess of benefits received under the Eastman Kodak plan. In a series

---

[1]    A "top-hat" pension plan is defined by ERISA as: "[A] plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1081(a)(3).

of subsequent transactions, Sterling was acquired first by SmithKline Beecham plc, and then by defendant Bayer Corp. ("Bayer").

In 1994, Coyne left Sterling's employ to join Eastman Kodak, where he worked until his retirement on July 1, 2003. In May 2003, with Coyne's retirement approaching, Eastman Kodak contacted Bayer to inquire about Bayer's responsibility for Coyne's benefits under the Sterling Plan. Bayer responded by e-mail with a request for Coyne's work history and a copy of the Plan, but expressed doubts about its responsibility for Coyne's benefits. Eastman Kodak provided the requested information.

On October 8, 2003, Eastman Kodak again contacted Bayer, seeking to confirm Bayer's responsibility for Coyne's benefits. Bayer responded promptly, and noted that Coyne was not yet eligible for benefits, but that it would nonetheless convene its benefits group to determine whether it would assume responsibility for payments to Coyne and, if so, to confirm the benefit amount. In several subsequent e-mails, Eastman Kodak sought confirmation from Bayer that it would assume responsibility for Coyne's benefits, which it informed Bayer would become due on March 1, 2004. Bayer never responded to any of those e-mails.

Defendants made no payment to Coyne on March 1, 2004, when he allegedly became eligible for benefits under the Plan, or at

any time thereafter.  On April 6, 2004, Eastman Kodak sent a letter to Bayer stating that "[d]espite repeated notices from Kodak, Bayer has failed to acknowledge its liability to Mr. Coyne under the Sterling Supplemental Retirement Benefit Plan and has failed to make the first payment due to Mr. Coyne.  Pursuant to undertakings to Mr. Coyne at the time of his retirement in July 2003, Kodak has paid Mr. Coyne his first monthly check .... Kodak seeks and requires Bayer to indemnify Kodak from, against and in respect of all losses arising from its breach of its obligations."  Bayer never responded to the letter.

Eastman Kodak and Coyne commenced this action on June 28, 2004.  Coyne sues defendants for his supplemental benefits under the Plan.  Eastman Kodak seeks indemnification for payments it has already made to Coyne.  Defendants moved to dismiss the action on the ground that Coyne has failed to exhaust administrative remedies, but withdrew their motion after the complaint was amended.  On October 15, 2004, defendants filed an answer asserting failure to exhaust administrative remedies as a defense.  At a pre-trial conference, defendants identified the administrative remedies that Coyne had failed to exhaust as those contained in an amendment to the Plan that was adopted on July 12, 2004, some two weeks after the filing of the complaint.  The amendment was adopted "as of January 1, 2004."

DISCUSSION

A motion for summary judgment should be granted if the court determines, from the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Where there are no material facts in dispute, a motion for summary judgment should be granted." Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp.2d 468, 471 (S.D.N.Y. 2004).

It is undisputed that the Plan at issue provided no administrative procedure for Coyne to follow at the time he retired or at the time this action was commenced. The parties disagree, however, as to whether Coyne must now exhaust the claim procedure first adopted in the belated amendment to the Plan. Defendants contend that, under the terms of the Plan, they are entitled retroactively to enforce procedural amendments, such as the July 12, 2004 amendment. Coyne must therefore exhaust the amendment's claim procedure before proceeding in federal court. Plaintiffs respond that the amendment does not apply because it impairs Coyne's right to benefits, and that, in view of defendants' failure to pay and to respond to Eastman Kodak's e-

mails and letter, requiring Coyne to exhaust the new claim procedure would be futile.

I.    The Retroactive Amendment

The first question is whether the amendment to the Plan, which was adopted after Coyne's retirement and after commencement of this action, applies to Coyne.

In the case of "top-hat" benefit plans, such as the Plan at issue here, courts apply principles of contract law in determining the rights of participants.  See Gallione v. Flaherty, 70 F.3d 724, 728-29 (2d Cir. 1995); Pereira v. Cogan, 200 F. Supp.2d 367, 375 (S.D.N.Y. 2002) ("Rights under a top hat plan are governed by contract law as opposed to trust or fiduciary principles under ERISA.").[2]  In deciding whether the amendment applies to Coyne, the language of the Plan is therefore controlling.

---

[2]    In Gallione, the Second Circuit explained the special treatment accorded "top-hat" plans under ERISA: "[I]n providing relief for 'top-hat' plans from the broad remedial provisions of ERISA, Congress recognized that certain individuals, by virtue of their position or compensation level, have the ability to affect or substantially influence, through negotiation or otherwise, the design and operation of their deferred compensation plan, taking into consideration any risks attendant thereto, and, therefore, would not need the substantive rights and protections of Title I [of ERISA.]"  Gallione, 70 F.3d at 728-29 (quoting Department of Labor Office of Pension & Welfare Benefit Programs, Opinion 90-14 A, 1990 WL 123933, at *1 (May 8, 1990)).

Article VI of the Plan provides that the employer has the right to amend, suspend, or terminate the Plan, in whole or in part, provided that "[n]o such amendment, suspension or termination shall retroactively impair or otherwise adversely affect the rights of any Employee or other person to benefits under the Plan that may have arisen prior to the date of such [amendment] as determined by the Committee in its sole discretion." Thus, the Plan expressly permits retroactive amendments that do not "impair" or "adversely affect" vested rights of participants.

Defendants argue that the amendment retroactively applies to Coyne because, as an initial matter, Coyne's right to benefits had never vested. Under ERISA, defendants contend, a participant's right to benefits only vests when the plan administrator makes a determination to that effect, which has never happened in Coyne's case. Defendants also argue that, even if Coyne's right to benefits had vested, the amendment nonetheless applies retroactively because it does not "impair" or "adversely affect" Coyne's rights.

Defendants' argument that Coyne's right could not vest under the Plan until the plan administrator says so is without merit. It is well-settled that "top-hat" benefit plans, which are exempt from ERISA's vesting requirements, <u>Healy v. Rich Products Corp.</u>, 981 F.2d 68, 72 (2d Cir. 1992), are interpreted in keeping with

7

the principles of unilateral contract law.  See Aiena v. Olsen, 69 F. Supp.2d 521, 533 (S.D.N.Y. 1999); Black v. Bresee's Oneonta Dept. Store, Inc. Sec. Plan, 919 F. Supp. 597, 602 (N.D.N.Y. 1996); see also Feifer v. Prudential Ins. Co. of America, 306 F.3d 1202, 1211 (2d Cir. 2002).  A "top-hat" plan is "a unilateral contract which creates a vested right in those employees who accept the offer it contains by continuing in employment for the requisite number of years .... [O]nce the employee performs, the offer becomes irrevocable, the contract is completed, and the employer is required to comply with its side of the bargain."  Kemmerer v. ICI Americas Inc., 70 F.3d 281, 287 (3d Cir. 1995) (quoting Pratt v. Petroleum Prod. Management Employee Sav. Plan, 920 F.2d 651, 661 (10th Cir. 1990)) (internal quotation marks omitted); accord Black, 919 F. Supp. at 602 ("[P]laintiff, by his full performance under all the ["top-hat"] plan's terms, had fully accepted the unilateral offer embodied in the terms of the Plan. Accordingly, plaintiff's rights under the unilateral contract had vested.").

Thus, insofar as Coyne accepted the Plan's unilateral offer by complying with all requisite terms, his right to benefits under the Plan vested.  Although defendants may proffer evidence showing that Coyne never actually complied with all the necessary preconditions to be entitled to benefits, they may not argue,

absent specific language in the Plan, that his right under the Plan could not vest until the plan administrator says so.

Defendants maintain, however, that there is such specific language in the Plan. Article VI of the Plan provides that amendments may not retroactively "impair or adversely affect the rights of any Employee or person to benefits under the Plan that may have arisen prior to the date of such [amendment] as determined by the Committee in its sole discretion." This language, defendants contend, confers upon the plan committee the discretion to determine whether participants' rights have "arisen," that is, vested. According to defendants, absent a decision by the committee such rights cannot vest.

The language defendants rely on, however, does not compel the conclusion that an affirmative decision by the committee is a *sine qua non* for the vesting of participants' rights. First, it is not entirely clear from the Plan's language whether, under Article VI, the committee has discretion to determine if participants' rights are "impaired or otherwise adversely affected" by retroactive amendments, or whether instead, as defendants urge, it has discretion to determine whether participants' rights have "arisen," i.e. vested, under the Plan. Even assuming it is the latter, it does not follow that participants' rights cannot vest absent an affirmative decision by the committee. Read the way defendants propose, Article VI

9

simply provides that the committee has discretion to determine eligibility for benefits under the Plan, not that the rights of participants who meet the eligibility criteria cannot vest absent an affirmative decision by the committee.

As for the retroactive application to Coyne of the amendment, it is settled that a "top-hat" benefit plan may be retroactively amended after participants' rights have vested only if the "explicit right to terminate or amend after participants' performance is reserved." Kemmerer, 70 F.3d at 287-88; see also Feifer, 306 F.3d at 1211. Here, the Plan only reserves the employer's right to adopt retroactive amendments that do not "impair or otherwise adversely affect" vested rights of participants.

The Plan's language -- in particular, the use of the terms "impair" and "adversely affect" -- suggests that it was intended to proscribe retroactive amendments diminishing the substance of participants' vested rights, but not amendments that are purely procedural in nature. It is instructive that, in the analogous context of standard ERISA-covered benefit plans, courts have drawn a similar distinction between retroactive amendments that are substantive, and thus impermissible, and retroactive amendments that are merely procedural, and thus permissible. See Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Employee Health and Welfare Plan, 298 F.3d 191, 195-96 (3d Cir. 2002)

(retroactive amendment was permissible where it "did not change the coverage under the plan or [the] substance of [the employee's] benefits or his entitlement to them"); Member Services Life Ins. Co. v. American Nat. Bank and Trust Co. of Sapulpa, 130 F.3d 950, 954 (10th Cir. 1997) ("An amendment to any ERISA plan may not operate retroactively if that amendment deprives a beneficiary of a vested benefit."); see also Virta v. DeSantis Enterprises, Inc., 1996 WL 663970, *4 (N.D.N.Y. 1996) (noting that "[e]ven if the Court had determined the Plan to be a Top Hat plan, this Court could not allow the termination language provided in the employer's plan to operate to deny a vested employee of benefits"). The July 12, 2004 amendment neither "changes [Coyne's] coverage" nor "deprives [Coyne] of a vested benefit."

Plaintiffs nevertheless contend that the amendment impairs the substance of Coyne's right to benefits. The new claim procedure allows the plan administrator ninety days from the date a claim is submitted to make a determination.[3] If an adverse determination is made, a claimant has sixty days to appeal that decision to a review committee, which must make a final determination within sixty days from the date of the appeal. Plaintiffs argue that if Coyne is required to exhaust this

---

[3] The plan allows for an extension of this time period by an additional ninety days in "special circumstances."

11

procedure, his right to benefits would be significantly delayed by as much as seven months.

Plaintiffs cite no authority for the proposition that temporary delay is a substantive impairment of a participant's right to benefits under an ERISA-covered plan. But cf. Koenig v. Waste Management, Inc., 76 F. Supp.2d 908, 915 (N.D. Ill. 1999) (benefits under "top-hat" plan were substantively impaired where payment was delayed "indefinitely" as opposed to temporarily). There is no question that, if Coyne ultimately prevails on his claim for benefits, he will be entitled to recover payments for the period in which the plan administrator and review committee consider his claim under the new procedure. See e.g., Black v. Bresee's Oneonta Dept. Store, Inc. Sec. Plan, 919 F. Supp. at 603 (awarding past due benefits under "top-hat" plan from day of eligibility). It is also not in doubt that, if Coyne is unsatisfied with the committee's decision, he can seek redress in this court. See Peterson v. Continental Casualty Company, 282 F.3d 112, 118 (2d Cir. 2002) ("Should [plaintiff] receive an adverse decision after exhausting administrative remedies, he may file a suit in federal court in the normal course."). Plaintiffs thus cannot point to any substantive impairment of Coyne's underlying right to benefits that would result from the delay associated with exhausting the new claim procedure.

Grasping at straws, plaintiffs also argue that Coyne's substantive right would be impaired by complying with the new procedure because the plan committee's decision, at the culmination of the administrative process, would be subject to a more deferential standard of review in this court. This argument is without merit.

A denial of pension benefits under an ERISA plan that grants the administrator discretionary authority to determine eligibility or to construe the plan's terms is reviewed under the "arbitrary and capricious" standard. See Muller v. First Unum Life Ins. Co., 341 F.3d 119, 123 (2d Cir. 2003); Mario v. P & C Food Markets, Inc., 313 F.3d 758, 763 (2d Cir. 2002). Under that standard, a court may overturn a plan administrator's decision to deny benefits "only if the decision was without reason, unsupported by substantial evidence or erroneous as a matter of law." Celardo v. GNY Auto. Dealers Health & Welfare Trust, 318 F.3d 142, 146 (2d Cir. 2003). Although the standard is deferential, if the plan administrator's interpretation of the plan is erroneous, federal courts are not without power to reverse the administrator's decision to deny benefits. See Gallo v. Madera, 136 F.3d 326, 330-31 (2d Cir. 1998) ("[W]here the trustees of a plan impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some

provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious."); Novella v. Westchester County, No. 02 Civ. 2192 (MBM), 2004 WL 1752820, *3 (S.D.N.Y. Aug. 4, 2004) ("The plan administrators acted in an arbitrary and capricious manner ... because their decision was based on an interpretation of the Westchester Plan that is inconsistent with the plain words of that Plan.").

Here, Article V of the Plan provides:

> The Plan shall be administered by the Committee, which shall have full power and authority to interpret and construe the Plan, to make all determinations considered necessary or advisable for the administration of the Plan and the calculation of the amount of benefits payable thereunder, and to review claims for benefits under the Plan. The Committee's interpretations and constructions of the Plan and its decisions or actions thereunder shall be binding and conclusive on all persons for all purposes.

The Plan thus confers conclusive authority on the committee to construe its terms and make claim determinations. The applicable standard of review is therefore the "arbitrary and capricious" standard. Cf. Mario, 313 F.3d at 763 (language reserving to plan administrator the discretionary authority to review all claims for benefits and to interpret the language of the plan was sufficient to trigger the "arbitrary and capricious" standard of review); Ganton Techs., Inc. v. Nat'l Indus. Group Pension Plan, 76 F.3d 462, 466 (2d Cir. 1996) (language reserving to plan trustees the authority to "resolve all disputes and ambiguities relating to the interpretation of the Plan, and the application of the terms of the Plan to any circumstances," and stating that trustees' decisions in such matters will be final, was sufficient to trigger the "arbitrary and capricious" standard of review).

The standard of review in this court would remain the same whether the denial is challenged now or at the conclusion of the administrative process. The question on review would be the same, namely, whether the denial of Coyne's benefits was without reason, unsupported by substantial evidence, or erroneous as a

matter of law.  This court is simply without authority to render a *de novo* determination in reviewing the discretionary decisions of the plan committee under the Plan.  See Peterson, 282 F.3d at 117 ("ERISA empowers federal courts to review the [discretionary] decisions of plan administrators, but provides no authority for a court to render a *de novo* determination of an employee's eligibility for benefits.").

It is true that the absence of a reasoned decision by the plan committee makes it more difficult to ascertain the grounds for denial of benefits.  But, if anything, this fact weighs in favor of requiring Coyne to exhaust the new claim procedure, so that review in this court may be had after a reasoned opinion is issued and an administrative record developed.  See Kennedy, 989 F.2d at 594 (observing that a primary purpose of the exhaustion requirement is to "provide a sufficiently clear record of administrative action if litigation should ensue").

Futility

II.

Plaintiffs contend that even if the amendment retroactively applies to Coyne, he is not required to exhaust the claim procedure set forth in it because doing so would be futile.  According to plaintiffs, defendants' failure to pay and to respond to Eastman Kodak's repeated reminders is clear evidence of their decision not to assume responsibility for Coyne's benefits.

The Second Circuit has recognized "the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases."  Kennedy, 989 F.2d at 594 (quoting Alfarone v. Bernie Wolff Construction, 788 F.2d 76, 79 (2d Cir. 1986)) (internal quotation marks omitted).  The exhaustion requirement serves to "(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*."  Davenport v. Harry N. Abrams, Inc., 249 F.3d 130, 133 (2d Cir. 2001); accord Kennedy, 989 F.2d at 594.

Only where a plan participant can make a "clear and positive" showing that pursuing administrative remedies would be futile, may he be excused from the exhaustion requirement. Davenport, 249 F.3d at 133; Kennedy, 989 F.2d at 594.  To overcome the strong policy in favor of exhaustion, the showing of futility must be substantial.  See Barnett v. International Business Machines Corporation, 885 F. Supp. 581, 587 (S.D.N.Y. 1995) ("The threshold required by the futility exception is very high."); Shamoun v. Board of Trustees, No. 04 Civ. 3368 (ILG),

15

2005 WL 419412, *6 (E.D.N.Y. Feb. 22, 2005) (same).  Absent a "clear and positive" showing of futility, federal courts are without jurisdiction to adjudicate a claim for benefits under ERISA.  See Peterson, 282 F.3d at 118; Barnett, 885 F. Supp. at 587 ("Th[e] exhaustion requirement is a jurisdictional prerequisite to a suit for benefits.").

Defendants' conduct does not rise to the level required for a showing of futility.  "Usually, the futility exception is applied in a context in which there has been, in some form, an unambiguous application for benefits and a formal or informal administrative decision denying benefits and it is clear that seeking further administrative review of the decision would be futile."  Barnett, 885 F. Supp. at 588.  In such circumstances, "some record for review has been established," allowing the district court to ascertain the reasons for the denial of the claim.  Id.  Moreover, although a formal initial denial of benefits may not always be necessary for a showing of futility,[4] "[a] de facto denial is simply not sufficient to satisfy the futility exception to the exhaustion requirement."  Id. 885 F. Supp. at 589.

Defendants' failure to pay and to respond to Eastman Kodak, in part precipitated by disagreement about the benefit amount due to Coyne and Eastman Kodak's responsibility for the benefits, is not the kind of unambiguous conduct that is sufficient for a showing of futility.  See e.g., Davenport, 249 F.3d at 133 (correspondence from the plan administrator that the participant may not be covered, in the absence of a formal application, was insufficient to establish futility); Barnett, 885 F. Supp. at 587 (allegation that defendant had informally notified claimant that an application for benefits, if made, would be denied was insufficient to show futility); Schein v. News America Publishing, Inc., No. 89 Civ. 0052 (MBM), 1989 WL 56255, *4 (S.D.N.Y. May 23, 1989) (plaintiff failed to establish futility based on informal communications from certain plan committee members where "a majority of the [committee] has not yet considered plaintiff's claims."); Shamoun, 2005 WL 419412, at *6

---

[4]  But see Peterson, 282 F.3d at 117 ("Consistent with th[e] narrow role for federal courts, all of our past decisions presuppose the existence [prior to judicial review] of an eligibility or claim determination on the part of the plan administrator."); Monroe-Trice v. Unum Employee Short-Term Disability Plan, No. 00 Civ. 6238 (JGK), 2002 WL 483312, *4 (S.D.N.Y. March 29, 2002) (noting that under Peterson, "the existence of an initial decision by the plan administrator is a non-waivable jurisdictional prerequisite to an ERISA action" that cannot be ignored on the ground of futility).

(defendants' informal assertion that plaintiff was not entitled to benefits was insufficient to show futility).[5]  Inferring a denial from defendants' conduct, with respect to a claim which was never formally or informally presented by Coyne himself,[6] would thwart the policy goals underlying the exhaustion requirement.  Davenport, 249 F.3d at 133.

CONCLUSION

For the foregoing reasons, plaintiffs motion for summary judgment is denied.  This action is dismissed without prejudice to its refiling after Coyne has exhausted the administrative procedure under the amended Plan.  To minimize delay, defendants are instructed to accept Coyne's complaint in this action as a formal claim for benefits that triggers the schedule for administrative determination set forth in the amended Plan.


SO ORDERED.

---

[5]  Plaintiff are mistaken in arguing that the foregoing cases are inapposite because they involved plans that contained a claim procedure when suit was commenced, in contrast to the Plan in this case which contained no such procedure.  Since, as discussed above, Coyne is subject to the July 12, 2004 amendment, futility has to be assessed by determining whether defendants' conduct to date has "clearly and positively" shown that requiring Coyne to go through the new claim procedure would be a pointless formality.  The fact that no claim procedure was in existence when Coyne brought suit, while relevant, does not render the foregoing cases inapposite for assessing what is required for a showing of futility.

[6]  Plaintiffs cite Vogel v. Independence Fed. Sav. Bank, 728 F. Supp. 1210 (D. Md. 1990) in support of their argument that inquiries from a third-party such as Eastman Kodak are relevant for assessing whether the futility exception applies.  In Vogel, however, the son of the claimant, who himself was physically incapacitated, communicated with the plan administrator in his father's behalf.  See Vogel, 728 F. Supp. at 1215. Plaintiffs do not suggest that Coyne was similarly restricted from making inquiries about his retirement benefits on his own.

17

Dated:  New York, New York
        May 6, 2005


                                   S/ _____
                                        MIRIAM GOLDMAN CEDARBAUM
                                        United States District Judge