```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
EASTMAN KODAK COMPANY and MARTIN
M. COYNE,

                    Plaintiffs,           OPINION

          -against-                       04 Civ. 05132 (MGC)


BAYER CORP., formerly MILES INC; THE
STERLING DRUG INC. SUPPLEMENTAL BENEFIT
PLAN; and THE SUPPLEMENTAL BENEFIT PLAN
COMMITTEE OF STERLING DRUG INC.,

                    Defendants.

-----------------------------------X
```

APPEARANCES:

  O'MELVENY & MYERS LLP
  Attorneys for Plaintiffs
  1625 Eye Street, NW
  Washington, District of Columbia  20006

  By: Karen M. Wahle, Esq.
    Robert M. Stern, Esq.

  ROSEN, PREMINGER & BLOOM
  Attorneys for Plaintiff Coyne
  708 Third Avenue, Suite 1600
  New York, New York  10017

  By: David Preminger, Esq.

  ECKERT SEAMANS CHERIN & MELLOTT, LLC
  Attorneys for Defendants
  600 Grant Street
  Pittsburgh, Pennsylvania  15219

  By: John J. Myers, Esq.

```
          HEIDELL, PITTONI, MURPHY & BACH, LLP
          Attorneys for Defendants
          99 Park Avenue
          New York, New York  10006

          By:  Scott Zimmerman, Esq.
```

**Cedarbaum, J.**

Plaintiff Martin Coyne moves for summary judgment on this claim for pension benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), Employee Retirement Income Security Act ("ERISA") § 502(a)(1)(B). An additional plaintiff, Eastman Kodak Co. ("Kodak"), sues for indemnification, but does not move for summary judgment at this time.  Bayer Corp., the Sterling Drug Inc. Supplemental Benefit Plan, and the Supplemental Benefit Plan Committee of Sterling Drug Inc. ("Defendants") move for summary judgment against both plaintiffs, seeking a determination that Coyne is not entitled to the benefits he seeks.  Defendants' motion is opposed by both Coyne and Kodak.  For the reasons that follow, Defendants' motion is granted and the complaint is dismissed.

## BACKGROUND

Familiarity with the procedural history is assumed.  See Eastman Kodak Co. v. Bayer Corp., 369 F. Supp. 2d 473, 476-77 (S.D.N.Y. 2005) ("Kodak I") (dismissing without prejudice to exhaust administrative remedies), vacated and remanded, 452 F.3d 215, 216-19 (2d Cir. 2006) ("Kodak II") (holding that an ERISA

benefits claimant is not required to exhaust a claims procedure whose adoption post-dates the suit to recover benefits). The parties stipulated to all of the facts material to the current summary judgment motions.

Coyne began working for Sterling Drug Inc. ("Sterling") in 1981. During his employment, he accrued pension benefits under the Sterling Drug Inc. Retirement Plan for Salaried Employees (the "Sterling Plan").

In 1988, Sterling was acquired by Kodak. Kodak added Appendix I to its pension plan, the Kodak Retirement Income Plan (the "KRIP"). Appendix I of the KRIP incorporated the terms of the Sterling Plan. Coyne, like the other employees of Sterling, continued to accrue benefits under the Sterling Plan, now Appendix I of the KRIP.

In February of 1994, Sterling's board approved what is known as a "top hat" plan, the Sterling Drug Inc. Supplemental Benefit Plan (the "Sterling Supplemental Plan"). Top hat plans provide employees with supplemental benefits beyond the limitations that the Internal Revenue Code places on ordinary ("qualified") benefit plans. See 26 U.S.C. §§ 401(a)(17) & 415; Kodak I, 369 F. Supp. 2d at 476; Kodak II, 452 F.3d at 217; Kemmerer v. ICI Americas Inc., 70 F.3d 281, 286-87 (3d Cir. 1995) (discussing top hat plans). A top hat plan pays what an employee would have received under the qualified plan if the Internal Revenue Code

3

did not limit the benefits available under qualified plans. Top hat plans are unfunded. As benefits become due they are paid from the general assets of the employer company and not from a pension trust. The Sterling Supplemental Plan, although created in 1994, had an effective date of January 1, 1991. Coyne did not accrue benefits under the Sterling Supplemental Plan in February of 1994, because top hat benefits accrued only to employees whose salaries were high enough to trigger a § 401(a)(17) benefits limitation.

In autumn of 1994, through a series of transactions involving multiple corporations (the "1994 Transaction"), Sterling was acquired by Bayer Corp. ("Bayer"). Some Sterling business lines, not relevant here, were sold to Sanofi Aventis and SmithKline Beecham. See Eastman Kodak Co. v. STWB Inc., 232 F. Supp. 2d 74 (S.D.N.Y. 2002), later opinion, 2002 WL 31465798 (S.D.N.Y. Nov. 4, 2002). Bayer assumed the obligation to pay the qualified pension benefits that had accrued under the KRIP for some Sterling employees. Supplement A, Article II was added to the Bayer Corporation Pension Plan, stating that Bayer's obligation to pay Sterling benefits only extends to "employees of Sterling who participated, or who were eligible to participate, in the KRIP ... and were employed by Sterling on November 1, 1994." (Bayer Corporation Pension Plan, Supplement A, art. II, ¶ S2.20(b).) Coyne was not employed by Sterling on November 1,

4

1994.  On October 13, 1994, he became an employee of Kodak.  At that time, he ceased to accrue benefits under Appendix I of the KRIP and began to accrue benefits under the regular provisions of the KRIP.

Coyne was an employee of Kodak until his retirement in 2003, and in his years at Kodak his salary exceeded the § 401(a)(17) limit on pension benefits.  Kodak has its own top hat plan, the Kodak Unfunded Retirement Income Plan.  Under that plan Coyne is entitled to $4,273.79 per month, which he is receiving.

On May 15, 2003, prior to Coyne's actual retirement, Kodak provided Bayer with an estimate of Coyne's benefits under the Sterling Supplemental Plan.  Neither Bayer nor Sterling made those payments, so on July 9, 2003, Kodak entered into an agreement with Coyne to advance payments to him equal to the Sterling Supplemental Plan benefits until the matter was resolved.[1]  On June 29, 2004, Coyne and Kodak filed this lawsuit. Coyne seeks benefits under the Sterling Supplemental Plan and a determination that the Sterling Supplemental Plan was obligated to pay him $11,305.18 per month for life in addition to his Kodak top hat pension.  Kodak seeks indemnification for the payments it

---

[1] Even though Coyne has arguably not suffered economic damage, he alleges a deprivation of his right to benefits, which satisfies the Article III requirement of actual injury. <u>Fin. Inst. Ret. Fund v. Office of Thrift Supervision</u>, 964 F.2d 142, 147 (2d Cir. 1992).

5

has made to Coyne based on its calculation of what he was owed under the Sterling Supplemental Plan.

**DISCUSSION**

ERISA plans are construed according to federal common law. Dobson v. Hartford Fin. Servs. Group, Inc., 389 F.3d 386, 399 (2d Cir. 2004). Plans are interpreted "as a whole, giving terms their plain meanings." Fay v. Oxford Health Plan, 287 F.3d 96, 104 (2d Cir. 2002). Where contract language is ambiguous, summary judgment is not appropriate.[2] Perreca v. Gluck, 295 F.3d 215, 224 (2d Cir. 2002). Whether language is ambiguous is a question of law to be resolved by reference to the contract alone. Fay, 287 F.3d at 104. The court must examine the context of the entire agreement and determine whether a reasonably intelligent person would find the language to be capable of multiple meanings. Id. If summary judgment is denied, relevant extrinsic evidence may be introduced at trial. Following such an inquiry, "absent evidence indicating the intention of the parties, any ambiguity in the language used in an ERISA plan

---

[2] At summary judgment, a court may look to extrinsic evidence to resolve ambiguity in an ERISA plan, but only when the extrinsic evidence is itself unambiguous. Shepley v. New Coleman Holdings Inc., 174 F.3d 65, 72 n.5 (2d Cir. 1999); see also Topps Co., Inc. v. Cadbury Stani S.A.I.C., 526 F.3d 63, 68 (2d Cir. 2008) (articulating the same principle as a matter of New York law).

should be construed against the interests of the party that drafted the language." Perreca, 295 F.3d at 223.

The Sterling Supplemental Plan "is intended to provide benefits in excess of the limitations imposed by Sections 401(a)(17) and 415 of the Internal Revenue Code ... to those employees of the Employer participating in the Kodak Retirement Income Plan." (Sterling Supplemental Plan, Introduction.) "Employer" is defined as Sterling. (Id.) As discussed above, Sterling employees were covered under Appendix I of the KRIP until Sterling was sold in the 1994 Transaction.

Eligibility for benefits under the Sterling Supplemental Plan is established as follows:

> "Eligible Person" means either (a) any person employed by [Sterling] who is a Participant in KRIP or (b) any person who had previously been, but is not currently, employed by [Sterling] who has a benefit payable under KRIP, whose benefits under KRIP are subject to the Section 401(a)(17) Limitation or the Section 415 Limitation.
>
> ....
>
> An Eligible Person shall become a Participant hereunder on the later of the effective date of the Plan or the first day of the calendar year in which his Accrued Benefit under KRIP is limited by the Section 401(a)(17) Limitation or the Section 415 Limitation.

(Id. arts. I & II.)

The parties agree that when Coyne left Sterling, in October of 1994, Coyne was not an Eligible Person and therefore was not a Participant under the Sterling Supplemental Plan. (See Joint

Statement of Material Facts, ¶¶ 43 & 44 (while employed by Sterling, Coyne's accrued benefit under the KRIP was not limited by § 401(a)(17) or § 415).)

Coyne argues, however, that he subsequently became an Eligible Person under the Sterling Supplemental Plan, by meeting the three requirements of definition (b).  First, he is a person who has previously been a Sterling employee.  Second, he earns a benefit from Kodak payable under the KRIP.  As to the third part of definition (b), Coyne believes there is an ambiguity as to when he became a former employee "whose benefits ... are subject to ... Section 401(a)(17)," but that under either of two possible interpretations he has become an Eligible Person.  His first interpretation is that he became an Eligible Person at the end of 1994 -- the first year in which his combined Sterling and Kodak income was greater than $150,000, thus triggering the § 401(a)(17) limitation.  (In 1994, § 401(a)(17) limited the pension benefits of employees earning more than $150,000.)  His second interpretation is that his benefits were not "subject" to § 401(a)(17) until he retired.  He began receiving pension benefits in 2004.  Therefore, under this interpretation, 2004 is when he became an Eligible Person.

Defendants offer a different interpretation of an Eligible Person.  Defendants argue that definition (b), by using the present tense, restricts eligibility to people who had already

retired from Sterling at the time the Sterling Supplemental Plan was adopted.  Under definition (b), eligibility for benefits extends to anyone who once worked for Sterling but "is" not currently employed by Sterling and "has" benefits under the KRIP that "are" subject to the § 401(a)(17) limitation.  Definition (b) does not encompass people who will retire in the future and will have KRIP benefits, which will be subject to the § 401(a)(17) limitation.  Under this view, definition (a) of an Eligible Person covers those who worked for Sterling at the time the plan was adopted, and definition (b) covers those who were retired at the time the plan was adopted.  The Sterling Supplemental Plan was adopted in 1994 but made retroactive through January 1, 1991, so it would extend benefits under this interpretation of definition (b) only to high-earning executives who had retired within the three years before the adoption of the plan.  The Sterling Supplemental Plan would not, under this interpretation, extend benefits to Coyne, since at the time the plan was adopted he fell under definition (a), "any person employed by the Employer."

    The plain language of the plan supports Defendants' interpretation.  Coyne argues that definition (b) applies to all former employees, no matter when they left Sterling.  If the Sterling Supplemental Plan was intended to cast such a wide net, then definition (b) should simply state that it applies to "any

person who has previously been employed by the Employer." Notably, though, definition (b) applies to "any person who had previously been, <u>but is not currently</u>, employed by the Employer." (Emphasis added.) Coyne's interpretation renders superfluous the words "but is not currently."

Defendants' interpretation is also the only interpretation that makes sense in the context of the entire agreement. Coyne argues that the Sterling Supplemental Plan was intended to provide benefits to executives who left Sterling and moved to Kodak. The Sterling Supplemental Plan, however, states that it "is intended to provide benefits ... to ... employees of the Employer," and "Employer" is defined as Sterling, not Sterling and/or Kodak. (Sterling Supplemental Plan, Introduction.) In addition, the Sterling Supplemental Plan states that it will not begin to pay top hat benefits until a Participant's qualified benefits are "reduced as a result of the Section 401(a)(17) Limitation and/or the Section 415 Limitation as a result of the Participant's employment by the Employer." (<u>Id</u>. art. III.) Once again the plan mentions only "the Employer," defined as Sterling, and fails to address the possibility of an employee's transfer from Sterling to Kodak. Top hat benefits will not be paid, therefore, unless the employee's salary <u>at Sterling</u> rises above the Internal Revenue Code's limitation for pension benefits.

Finally, the plan language at issue does not support multiple meanings when viewed objectively by a reasonably intelligent person. Fay, 287 F.3d at 104; Perreca, 295 F.3d at 224. Even if Coyne's interpretation fell within the realm of possible readings of the plan, his reading would not create ambiguity because it is not a reasonable interpretation. Coyne left Sterling in 1994 and moved to a company that was no longer affiliated with Sterling. Coyne worked for Kodak for almost ten years, then retired and began to receive pension benefits under Kodak's top hat plan because his salary at Kodak rose above the § 401(a)(17) limitation. Coyne now presses for additional top hat benefits under Sterling's plan, arguing that Sterling's obligation to pay these benefits was triggered by the high salary he attained at an entirely different company. Coyne's argument is not reasonable.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is granted and the complaint is dismissed. The clerk is directed to close this case.

SO ORDERED.

Date:   New York, New York
        September 4, 2008

                                    S/_____
                                       MIRIAM GOLDMAN CEDARBAUM
                                       United States District Judge